UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| RAQUEL N. CORNES, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, Acting ) <br> Commissioner of the Social Security ) <br> Administration, ) <br> ) <br> Defendant. ) | Cause No. 2:17-cv-195-WTL-DLP |

# ENTRY ON JUDICIAL REVIEW

Plaintiff Raquel Cornes requests judicial review of the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner"), finding that her disability had ended and she was no longer entitled to Disability Insurance Benefits ("DIB"). The Court rules as follows.

## I. PROCEDURAL HISTORY

In a previous determination dated March 16, 2010, Cornes was found disabled by the Social Security Administration ("SSA") as of August 17, 2010. On August 16, 2013, as the result of a periodic review, it was determined that Cornes was no longer disabled as of that date. The cessation determination was subsequently upheld upon reconsideration. Thereafter, Cornes requested a hearing before an Administrative Law Judge ("ALJ"). An ALJ held a hearing on November 17, 2015, at which Cornes, proceeding without representation, and a vocational expert ("VE") testified. The ALJ issued her decision on May 4, 2016, finding that Cornes had not been disabled since August 16, 2013. After the Appeals Council denied Cornes's request for review on February 23, 2017, Cornes filed this action seeking judicial review on May 1, 2017.

## II. EVIDENCE OF RECORD

The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

## III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant continues to be disabled, the Commissioner employs an eight-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity and any applicable trial work period has been completed, she is no longer disabled. 20 C.F.R. § 404.1594(f)(1).

At step two, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1; if so, her disability continues, and if not, the Commissioner proceeds to step three. 20 C.F.R. § 404.1594(f)(2). At step three, the Commissioner determines whether medical improvement has occurred; if so, the analysis proceeds to step four, if not it proceeds to step five. 20 C.F.R. § 404.1594(f)(3). At step four, the Commissioner determines if any medical improvement is related to the ability to work; if not, the disability continues, if so, the analysis proceeds to step five. 20 C.F.R. § 404.1594(f)(4). At step five, the Commissioner determines if one of two groups of exceptions applies; if neither applies, the disability continues. If the first group applies, the analysis proceeds to step six, and

if the second group applies, the claimant is no longer disabled. 20 C.F.R. § 404.1594(f)(5). At step six, the Commissioner determines whether all of the claimant's current impairments in combination are severe. If they are, the Commissioner proceeds to step seven; if they are not, the disability has ended. 20 C.F.R. § 404.1594(f)(6). At step seven, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine if she can perform her past relevant work. 20 C.F.R. § 404.1594(f)(7). If she can perform any of her past relevant work, the disability has ended, but if she cannot perform any of her past relevant work, the analysis proceeds to the last step. *Id.* At step eight, the Commissioner determines if there is other work that claimant can perform considering her age, education, past work experience, and RFC, with a limited burden shifting to the Commissioner to provide evidence that demonstrates that other work exists in significant numbers that claimant can still do given the relevant vocational factors. 20 C.F.R. § 404.1594(f)(8). If the Commissioner finds other work that claimant can do, she is no longer disabled. *Id.* If the Commissioner cannot find other work that claimant can do, she remains disabled and entitled to DIB. *Id.*

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony presented," she must "provide an accurate and logical bridge between the evidence and her conclusion that a claimant is not disabled." *Kastner*

*v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). "If a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required." *Id.* (citation omitted).

## IV. THE ALJ'S DECISION

The ALJ found at step one that Cornes had not engaged in substantial gainful activity. At step two, the ALJ found that Cornes did not have an impairment or combination of impairments which met or medically equaled the severity of any of the impairments in the Listing of Impairments. At step three the ALJ found that medical improvement occurred as of August 16, 2013. Using the most recent favorable determination as a point of comparison, where Cornes had been found to meet Listing 12.04 for her depression, the ALJ found at step four that medical improvement was related to the ability to work, because as of August 16, 2013, Cornes's impairment no longer met or medically equaled the listing. The ALJ did not document any step five findings. The ALJ found at step six that Cornes continued to have the following medically determinable impairments: degenerative joint disease, osteoarthritis, vertigo, dysthymia, borderline intellectual functioning, and obesity, which either alone or in combination were severe. The ALJ's RFC determination was as follows:

> Based on the impairments present as of August 16, 2013, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) as the claimant is able to lift and/or carry 10 pounds occasionally, sit for six hours in an eight hour workday and stand and/or walk for two hours in an eight hour workday, except: the claimant needs to alternate between sitting and standing for five to ten minutes every hour while remaining on task at their workstation, is unable to climb ladders, ropes or scaffolds, may occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl or reach overhead bilaterally and must avoid all exposure to extreme temperatures and hazards such as unprotected heights or dangerous machinery. In addition, the claimant is able to understand, remember and carry out simple, routine tasks, can maintain adequate attention and concentration to carry out said tasks on jobs that do not involve fast paced production or daily quotas, is able to manage changes in a routine work-setting and is able to interact appropriately but on a superficial basis with co-workers and supervisors and occasional brief and superficial interaction with the general public.

Record at 16. The ALJ concluded at step seven that Cornes was unable to perform past relevant work as a cleaner-housekeeper and home attendant. At step eight, the ALJ found, based on VE testimony considering Cornes's age, education, work experience, and RFC, that there were jobs that existed in significant numbers in the national economy that she could perform. Accordingly, the ALJ concluded that Cornes's disability ended as of August 16, 2013.

## V. **DISCUSSION**

Cornes argues that the ALJ erred in numerous respects, which the Court addresses, in turn, below, as necessary to resolve this appeal.

### A. Moderate Difficulties with Concentration, Persistence, or Pace

Cornes argues that the ALJ's RFC assessment failed to properly accommodate her concentration, persistence, or pace limitations.

Regardless of the basis, a hypothetical question put by the ALJ to the VE "must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994); *Indoranto v. Barnhart,* 374 F.3d 470, 473-74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record.") (citing *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) (additional citations omitted)); *see also* SSR 96-5p, 1996 WL 374183, at *5 (RFC assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence"); 20 C.F.R. § 404.1545. "Among the mental limitations that the VE must consider are deficiencies of concentration, persistence, or pace." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (citing *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009)). "Although it is not necessary that the ALJ use the precise terminology of 'concentration,' 'persistence,' or 'pace,'

5

we will not assume that a VE is apprised of such limitations unless he or she has independently reviewed the medical record." *Id.* at 814 (citing *Yurt*, 758 F.3d at 857).[1]

The ALJ found that the record supported moderate difficulties in concentration, persistence, or pace when assessing the "paragraph B" criteria used to evaluate the severity of mental health conditions.[2] R. at 14. The ALJ also gave "great weight" to the opinion of Benetta Johnson, Ph.D., a psychological consultant for the state agency. R. at 14. The ALJ noted that Dr. Johnson had indicated that Cornes had moderate limitations in concentration, persistence, and pace, and had opined a mental RFC that Cornes "is able to understand, remember and carry out simple tasks, can relate to people on at least a superficial basis, can attend to task for sufficient periods of time to complete simple tasks and can manage light stresses involved in work related tasks." R. at 14-15 (citing R. at 332). The ALJ further noted that the assessment was affirmed by a second psychological consultant at the reconsideration stage and "[a]fter reviewing the record, the undersigned finds that these opinions are consistent with the objective evidence and relies heavily on them in determining the above 'Paragraph B' criteria." R. at 15.

The Seventh Circuit has repeatedly expressed its concerns with translating moderate limitations of concentration, persistence, or pace into limitations as to the skill level demands of a job. "In most cases, however, employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant

---

[1]There is no evidence that the VE independently reviewed the medical record or was otherwise apprised of Cornes's limitations beyond what was conveyed to him by the ALJ in hypotheticals, which progressively added limitations, including one hypothetical described in terms identical to the ALJ's ultimate RFC finding.

[2]The difficulties identified in the "paragraph B" criteria are used to rate the severity of mental impairments at step two and step six. 20 C.F.R. § 404.1520a(d)-(e). However, the RFC assessment used at steps seven and eight requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorder listings. SSR 96-8p. Cornes challenges the ALJ's RFC finding based on an alleged failure to itemize her more detailed functional restrictions.

problems of concentration, persistence and pace." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (citing *Stewart*, 561 F.3d at 684-85 (limiting hypothetical to simple, routine tasks did not account for limitations of concentration, persistence, and pace); *see also Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (restricting hypothetical to unskilled work did not consider difficulties with memory, concentration or mood swings)). "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620 (citing *Stewart*, 561 F.3d at 684-85; *Craft*, 539 F.3d at 677; *see also* Social Security Ruling 85-15 (1985) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.")) "[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt*, 758 F.3d at 858-59.

The Court agrees with Cornes's argument that the ALJ's RFC finding did not adequately account for the moderate limitations in attention and concentration supported by the record. The Court believes that the combined holdings of *Varga* and *Yurt* are controlling in this case. "This circuit has declined to adopt a blanket rule that checked boxes in Section I of the MRFCA form indicating moderate difficulties in mental functioning need not be incorporated into a hypothetical to the VE. In fact, in *Yurt*, we explicitly rejected the argument that 'we should be unconcerned . . . with the failure of the ALJ to mention the . . . areas where [the state psychologist] found moderate limitations because the narrative portion of the form adequately translated these limitations into a mental RFC that the ALJ could reasonably adopt.'" *Varga*,

7

794 F.3d at 816 (citing *Yurt*, 758 F.3d at 858). Here, the ALJ explicitly relied heavily on Dr. Johnson's Section I of the MRFCA form assessments that Cornes would have moderate limitations in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and *the ability to maintain attention and concentration for extended periods*. R. at 330. The ALJ then attempted to capture the full limitations of record in her RFC finding which described in relevant part that Cornes "is able to understand, remember and carry out simple, routine tasks, can maintain adequate attention and concentration to carry out said tasks on jobs that do not involve fast paced production or daily quotas, is able to manage changes in a routine work-setting and is able to interact appropriately but on a superficial basis with co-workers and supervisors and occasional brief and superficial interaction with the general public." R. at 14.

In *Varga*, the Circuit also dealt with a state agency consultant's opinion that included moderate limitations in the ability to maintain attention and concentration for extended periods. *Varga*, 794 F.3d at 814. The RFC used in *Varga* described similar limitations "to simple, routine, and repetitive tasks . . . free of fast paced production requirements, involving only simple work related decisions with few if any work place [sic] changes and no more than occasional interaction with coworkers or supervisors," which the Circuit held covered only limitations to skill level and workplace adaptation—not attention and concentration. *Id.* at 814-15. The Circuit in *Varga* further recognized the similarities with *Yurt*, where the RFC additionally included a similar limitation as the instant case that described that the claimant was able to "attend to tasks for sufficient periods of time to complete." *Id.* at 815 (citing *Yurt*, 758 F.3d at 855). However, the collective limitations were found inadequate. "Because a hypothetical posed to a VE must incorporate *all* of the claimant's limitations supported by the medical record—including moderate limitation in concentration, persistence, and pace—we find

8

that the ALJ committed reversible error." *Id.* at 814 (citing *Yurt*, 758 F.3d at 857 (failure of ALJ to include in hypothetical moderate difficulties in concentration, persistence, and pace attributed to applicant in Section I the MRFCA form was reversible error).

The Commissioner cites to an unpublished, nonprecedential decision of the Seventh Circuit for the proposition that "[n]o rule requires that the ALJ use a particular wording regarding pace limitations in the hypothetical if alternative phrasing adequately accounts for the claimant's limitations . . . The ALJ permissibly used the alternative phrase 'no production or pace rate work' to account for Cihlar's work-pace limitations." Commissioner's Brief at 13 (quoting *Cihlar v. Berryhill*, 706 Fed. Appx. 881, 883 (7th Cir. 2017) (citing *O'Connor-Spinner*, 627 F.3d at 620)). However, the Court finds *Cihlar* to be readily distinguishable. In *Cihlar*, the ALJ was adopting the opinion of a consultative examiner that the "work pace probably has to be slowed down to allow her to function adequately." *Id.* The ALJ also gave substantial weight to the consultative examiner's opinion that the claimant's memory and concentration were within normal limits. *Id.* The Circuit allowed the ALJ's limitation to "no production or pace rate work" to stand because it fully accommodated the particular limitations found by the consultative examiner. Here, as noted above, Dr. Johnson's opinion, which the ALJ ostensibly relied heavily upon, did not find Cornes's concentration to be within normal limits, but rather opined that it was moderately limited. There is no portion of the ALJ's RFC finding that specifically reflects that concentration deficiency. Moreover, the VE testified that an individual could be off-task at most about five percent of the time in order to maintain competitive employment. R. at 69. Accordingly, the Court finds the ALJ's error material and that remand is required for further consideration.

## B. Dr. Bolinskey's Opinion

In a related argument, Cornes also asserts that the ALJ erred in relying upon the findings of a consulting examiner, Dr. Bolinskey. Among the arguments Cornes makes is that the ALJ selectively referred only to the portions of the report that supported her decision. The Court does not agree that the ALJ's summary of Dr. Bolinskey's report itself was misleading in any significant way. The ALJ referred to the report in support of her conclusion that concentration, persistence, or pace was moderately limited (and presumably in support of her conclusion that Cornes was not more limited). The ALJ accurately described the results of the IQ testing showing a score in the extremely low range, forty-one, but also gave the proper context that Dr. Bolinskey believed "the results were not an accurate estimate of her current level of functioning due to misleading behavior that *suggested* she was malingering (Exhibit 13F/2, 3)." R. at 14 (emphasis added). Dr. Bolinskey did in fact diagnose malingering. The Court does not read the ALJ's treatment of the report to suggest that she had conclusively agreed with the diagnosis and she did acknowledge the actual results of the IQ testing. Moreover, the Court agrees with the Commissioner that Cornes's remaining arguments about the results of Dr. Bolinskey's report are mostly speculative and more importantly fall outside the scope of review for this Court, which is not able to reweigh evidence.

However, the ALJ's discussion of Dr. Bolinskey's report is not without issue. "The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires [her] to do." *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). An ALJ must consider "*all* relevant evidence" and may not analyze only that information supporting the ALJ's final conclusion. *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (emphasis in original). Imperative to the ALJ's analysis of whether a disability continues or ends is a comparison of the current evidence with the underlying evidence that

10

established disability in the most recent favorable determination. *See* 20 C.F.R. § 404.1594.

Notably missing from the ALJ's decision, which discusses every other medical opinion of record, is any discussion of a consultative examination report from February 2009, in connection with the prior favorable determination, from Dr. Brody. Dr. Brody also tested Cornes's IQ and found a full scale score of fifty, resulting in a diagnosis of "moderate mental retardation" (using now outdated terminology). R. at 229-30. Dr. Brody's assessment directly conflicts with the ALJ's decision finding borderline intellectual functioning to be the supported severe impairment, that more recent IQ testing was invalid, and that Cornes was not more functionally limited by her intellectual disorder.[3] The ALJ should have articulated how she resolved the conflict in the evidence or at least demonstrated for the Court that she was aware of the conflicting evidence.

Dr. Bolinskey was aware of the prior testing and assessment of Dr. Brody and made several comments criticizing Dr. Brody's conclusions. For example, Dr. Bolinskey opined that the earlier testing results may also be invalid, based on Cornes's ability "to engage in a clear pattern of misleading test behavior" during the most recent testing. R. at 396. However, Dr. Bolinskey's criticism is not entirely accurate, as he noted that Dr. Brody "made no comment regarding the validity of the testing results," R. at 396, when in fact Dr. Brody noted that Cornes "is functioning intellectually within the moderately mentally retarded range. She has academic skills which are consistent with this finding. In my opinion these test results provide a valid estimate of her intellectual functioning." R. at 229. Because the Court cannot determine if the ALJ even reviewed Dr. Brody's report, and further cannot determine how the evidence would have affected the ALJ's opinion as to the validity of IQ testing or the validity of Dr. Bolinskey's

---

[3] "Mental retardation" was formerly the diagnostic criteria for Listing 12.05, since renamed "intellectual disability," which triggers a listing analysis that differs notably from the other mental health listing of impairments. 20 C.F.R. pt. 404, subpt. P, App. 1.

11

malingering diagnosis, both of which may have profoundly colored her overall conclusions, the issue further supports remand for reconsideration of all the relevant evidence.[4]

### C. Evidentiary Deficit and the Physical RFC Finding

Cornes further argues that the ALJ rejected the state agency reviewing consultant opinions as to her physical RFC, creating an evidentiary deficit, and did not explain how she filled that gap to arrive at her own RFC finding. The Court agrees. Cornes primarily relies on an unpublished, nonprecedential decision of the Seventh Circuit in *Suide v. Astrue*, 371 F. App'x 684 (7th Cir. 2010). However, the holding in *Suide* rests on longstanding Seventh Circuit precedent. "When an ALJ denies benefits, she must build an 'accurate and logical bridge from the evidence to her conclusion,' *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000), and she is not allowed to 'play doctor' by using her own lay opinions to fill evidentiary gaps in the record, see *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003)." *Suide*, 371 F. App'x at 690.

The ALJ noted the state agency consultant opinions of Dr. Brill and Dr. Smartt, who both opined that Cornes was limited to a reduced range of light work. "The undersigned gives these opinions some weight, as updated medical records received at the hearing level from Providence Medical Group, Regional Health Orthopedics and Terre Haute Regional Hospital (Exhibits 17F, 18F, 19F) indicate that the claimant has been administered a steroid injection to her left knee due to continued tenderness and limited range of motion of the joint and that she was referred to an orthopedic surgeon to determine if she is a candidate for arthroscopic surgery or total knee replacement." R. at 21. The ALJ then announced that the updated evidence supported her RFC finding that Cornes was limited to a reduced range of sedentary work.

---

[4] Even the physical RFC assessment of a reviewing physician appeared to be influenced by the IQ testing performance and indication of malingering. *See* R. at 409 (Dr. Smartt found Cornes to be only partially credible as to the severity of her symptoms and alleged effect on functioning and cited to the results of the consultative examination with Dr. Bolinskey for support).

The vast majority of the treatment records that the ALJ summarized to arrive at her RFC finding were not part of the evidence that was reviewed by the state agency consultants. Instead, the records were in the three exhibits that the ALJ identified as inconsistent with the consultant opinions. The ALJ was correct to have focused her analysis of the consultant opinions on the inconsistencies with updated evidence of Cornes's significant left knee problems. The latest consultant opinion of record, rendered by Dr. Smartt, did not note any indications of a left knee impairment at all, based on the evidence available at the time of his review. R. at 405-06. "An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018 (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after ALJ failed to submit new MRI to medical scrutiny)). In light of *Moreno* and the related cases cited above, the Commissioner's argument is not well taken that the ALJ's RFC finding was supported by substantial evidence, because she gave some weight to the consultant opinions who agreed with the ALJ in the ultimate result of the claim. By that rationale, an ALJ would be free to deny every claim where the consultants opined less than a disabling RFC, regardless of the updated evidence.

The Court reads the ALJ's decision differently, and finds that the basis of the ALJ's RFC was her assessment of the updated medical evidence. "We have made clear, however, that ALJs are not qualified to evaluate medical records themselves, but must rely on expert opinions." *Moreno*, 882 F.3d at 729 (citing *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (remanding because the ALJ improperly "played doctor"); *Goins*, 764 F.3d at 680 (prohibiting ALJs from "playing doctor" by summarizing the results of a medical exam without input from an expert).

The concern with the ALJ playing doctor is borne out by her treatment of the evidence in this case. The Court is not able to logically follow some of her conclusions based on the evidence cited.

For example, the ALJ's discussion of Cornes's use of a walker is not well supported. The ALJ notes, "While the claimant was recommended to use a walker, the record does not indicate she actually was provided with a prescription for one." R. at 20. The ALJ not only contradicts herself, inasmuch as earlier in the decision she accurately notes that a walker was in fact prescribed, R. at 19 (*see* R. at 479 ("will give Rx for Walker W/O wheels")), but, in addition, the Court is not able to follow the import of the distinction in the first place. A walker is not a controlled substance that requires a prescription. Often a prescription might be necessary for insurance coverage purposes. The relevant question is whether the assistive device is required for ambulation. "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p. The ALJ does not address the question of whether Cornes's use of a walker was necessary. There is at least some evidence in the record that it was; a physician noted that "[s]he has now required the use of a walker due to her knee pain." R. at 430. Of course, it is not clear on the face of this statement whether it reflects the physician's opinion or whether it is simply repeating what Cornes has reported, but on remand the ALJ should examine this and other evidence regarding whether Cornes's use of a walker was medically indicated.

Secondly, the ALJ's discussion of the examination findings related to the knee impairment cherry picks evidence to support her finding and ignores evidence that contradicts it. The ALJ notes that a recent physical examination indicated that Cornes was able to walk with a

14

normal gait unassisted, citing R. at 448, and that physical examinations have been "mostly unremarkable," R. at 20. However, she neglects to mention that even on the visit at which Cornes's gait was noted to be unassisted, her sensation was decreased and the assessment was severe osteoarthritis. R. at 448. At nearly every other visit with the provider, her gait was noted to be abnormal, and decreased sensation also was noted. R. at 463, 469, 474, and 479.

Lastly, even the evidence the ALJ cites fails to explain how disabling complaints were logically undermined. For example, the ALJ notes that Cornes "was recommended to manage her symptoms by using conservative treatment, was informed that arthroscopic surgery would likely provide her with little relief due to the nature of her arthritis and that she was somewhat too young for a total knee replacement (Exhibit 17F/1)." R. at 20. Despite Cornes's young age, multiple providers have discussed the upcoming need for a knee replacement due to her tricompartmental degenerative changes. R. at 430, 466. The concern with proceeding with a knee replacement at her age does not appear to have anything to do with the severity or lack thereof of her impairment and corresponding complaints of pain. The ALJ also makes note of the fact that Cornes "was instructed to remain socially and physically active on numerous occasions. This is inconsistent with a finding of disability." R. at 20. The ALJ is correct that the record reflects she has been told to "keep physically active." R. at 464, 474, and 479. However, the same provider contemporaneously discussed possible knee replacement, noted her antalgic gait, and prescribed her a walker. Depending on the context, "keeping physically active" could mean anything along a continuum from avoiding complete immobility to running marathons. Given the nature of the provider's treatment, it is entirely possible the directive was given not because she was physically capable of significant work-like activity, but rather because her impairment was significantly limiting but engaging in some physical activity was nonetheless better for Cornes's overall health than being immobile. At any rate, it is not clear to the Court

15

how being told to remain physically active demonstrates that Cornes is not disabled. *See Carradine v. Barnhart*, 360 F.3d 751, 755-56 (7th Cir. 2004) ("she does claim to be paralyzed" and the ALJ "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week," that was further "perverse" when the activity in question was a form of therapy necessary to manage her condition). The Court finds the ALJ's lay assessment of the significant updated medical evidence to be problematic, necessitating remand for further consideration, perhaps with the assistance of a medical expert.

### D. Cornes's Other Arguments

Cornes also raises several issues concerning the proper evidentiary development of the record and the duties of the ALJ in handling certain issues with an unrepresented claimant who may not have understood portions of the proceedings due to her intellectual disorders. The Court need not address these further arguments, which are rendered moot in light of Cornes now having representation and the Court finding independent grounds supporting remand for further proceedings.

### VI. CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with the Court's Entry.

SO ORDERED: 4/16/18

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana


Copies to all counsel of record via electronic notification